UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAVEN'S PLACE, LLC, et al. <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BLUE ISLAND, an Illinois Municipal Corporation, and FRED BILOTTO, in his individual capacity and as Mayor of the City of Blue Island <br><br> Defendants. | Case No. 23-cv-00728 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Raven's Place, a Black-owned bar located in Blue Island, and its owner and manager, Dushone Thomas and Raymond Thomas, sued the City of Blue Island for claims arising from a settlement agreement between the parties. Plaintiffs claim that the agreement contained restrictions on its business that violated its rights to due process and equal protection under the U.S. and Illinois constitutions. Before this Court is Defendants' motion to dismiss the complaint. [16]. For the reasons explained below, this Court grants in part Defendants' motion to dismiss.

I. Background

A. Factual Background

The Court takes the following factual allegations as true at the motion to dismiss stage. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th

1

Cir. 2007). Plaintiffs owned and operated Raven's Place and the Vault, two establishments licensed to serve a full liquor bar, in Blue Island, Illinois. [1] at 8-9, ¶¶ 9-11. Plaintiff Dushone Thomas is the owner of Raven's Place and Raymond Thomas its manager. *Id.* at 7-8, ¶¶ 1-2. Both individuals are African American. *Id.* 80 to 90 percent of patrons at Raven's Place and the Vault are also African American. *Id.* at 16, ¶ 65.

The Blue Island liquor commission temporarily suspended the Vault's liquor license from May 7, 2021 to May 14, 2021 following a "criminal incident" outside the bar. *Id.* at 9, ¶ 12. When Raven's Place invoked its right to a hearing before the liquor commission, Blue Island officials suggested an alternative arrangement that would allow the bar to remain open. *Id.* at ¶¶ 13-14. On May 18, 2021, Blue Island and the Plaintiffs entered into a settlement agreement (drafted by Blue Island) that laid out certain requirements for both the Vault and Raven's Place. *Id.* at ¶¶ 15-16.

The agreement obligated Raven's Place management to: a) use identification scanners to grant entry to the bar, b) restrict entry to individuals over the age of 30 years old; c) end alcohol sales by 1:30 a.m. and close the premises by 2:00 a.m.; d) commission a security plan from a private security firm selected by Blue Island; and e) review rules on occupancy, liquor license classifications, and relevant health and safety codes with Blue Island officials. *Id.* at ¶19. Blue Island further specified that the security plan must provide for the purchase and use of security cameras, two-way radios, and hand-clickers, as well as monthly meetings between Raven's

2

Place management and the Blue Island chief of police. *Id.* at 11, ¶ 27. Plaintiffs allege that they entered into the agreement to maintain business and the staff's source of income. *Id.* at 10, ¶ 22. Raven's Place maintained compliance with both the settlement agreement and security plan. *Id.* at 11, ¶ 31.

In September 2022, a shooting took place half a block away from Raven's Place. *Id.* at 12, ¶ 32. In response, Blue Island suspended the bar's liquor license for seven days, then permanently revoked the license after a hearing before the local liquor license commission. *Id.* at ¶ 35. Raven's Place appealed the revocation to the state Liquor Commission and remained in operation pending the outcome of the appeal pursuant to the Illinois Liquor Control Act, 235 ILCS 5/7-9. [1] at 72.

Plaintiff Raymond Thomas met with Blue Island officials about the temporary suspensions that occurred in May 2021 and September 2022. [1] at 15, ¶¶ 36, 60. Municipal officials told Raymond that Raven's Place customers were not "sophisticated or tame." *Id.* at ¶ 61. When Raymond asked if they were referring to his customers' race (as opposed to their age), the officials responded, "you know what we're talking about," and, "with the business that you have now, you're going to have nothing but problems." *Id.* at ¶¶ 62-64. Plaintiffs also allege that after they entered into the May 2021 agreement, three other bars signed less stringent settlement agreements with Blue Island to address criminal activity on their premises. *Id.* at ¶¶ 40-58. Those bars, Plaintiffs allege on information and belief, are not owned by African Americans. *Id.* at ¶¶ 105, 108, 153.

On January 6, 2023, Plaintiffs filed suit against Blue Island in Cook County

3

Circuit Court. [1] The complaint alleged that the settlement agreement violated the Plaintiffs' rights to substantive due process and equal protection under the U.S. Constitution (Count I) and violated Plaintiffs' right to of due process and equal protection under the Illinois constitution (Count II). [1]. On February 6, 2023, Defendants removed the case to this Court. *Id.* Defendants now move to dismiss arguing that that the settlement agreement included a general release applicable to all claims in the complaint and the complaint fails to state a claim. [16].

## II. Legal Standard

A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022); *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all reasonable inferences in the pleading party's favor. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Dismissal for failure to state a claim is proper "when the allegations in a

4

complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586-87 (7th Cir. 2021) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

### III. Analysis

#### A. Raven's Place released claims within its knowledge at time it signed the settlement agreement.

The May 2021 settlement agreement included a release provision that reads: "By Signing this Agreement, the Licensee *releases all claims against the City of Blue Island*, its officials and employees or agents including but not limited to an appeal of this matter." [16] at 7 (emphasis added). Defendants argue that by signing the agreement containing this general release, Raven's Place waived all claims against Blue Island and its employees that arise from the May 2021 settlement agreement, including both claims in the instant complaint. *Id.* at 4-7. Raven's Place responds that the settlement agreement is void because Blue Island is a non-home rule municipality and was not authorized by state law to enter the contract. [19] at 4-6.

For the reasons explained below, the Court finds the settlement agreement was a valid contract and the general release covered all claims that Raven's Place reasonably knew about when it signed the agreement. This includes its due process claim here, but not the equal protection claims.

5

### 1. The settlement agreement was a valid exercise of Blue Island's municipal powers.

To apply the release to the instant complaint, the Court must first find that the settlement agreement is a binding contract. Defendants argue that Raven's Place knowingly and voluntarily signed the agreement and does not show any mistake or fraud that would void the contract now. [16] at 5-6. Raven's Place bypasses this argument altogether, contending that the agreement was outside the scope of Blue Island's legal powers and therefore void *ultra vires*. [19] at 6.

Blue Island, as a non-home rule municipality, has "limited powers." *Vill. of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 787 (7th Cir.2008) (citing *Hawthorne v. Vill. of Olympia Fields*, 204 Ill.2d 243, 255, 274 Ill.Dec. 59, 790 N.E.2d 832 (2003); *see also Affordable Recovery Hous. v. City of Blue Island*, 74 F. Supp. 3d 875, 878 (N.D. Ill. 2014) (discussing Blue Island's status as a non-home rule unit).

The Illinois Constitution gives non-home rule units six enumerated powers:

> (1) the power to make local improvements by special assessments; (2–4) the power, through referendum, to adopt, alter or repeal their forms of government and to provide for "their officers, manner of selection and terms of office"; and (5–6) the power to incur debt and to levy or impose additional taxes, subject to certain exceptions and limitations.

Ill. Const.1970, art. VII, § 7. Non-home rule units also have powers that are expressly or implicitly granted by state statutes, *Hawthorne,* 204 Ill.2d at 258-59, or else "indispensable to the accomplishment of the declared objects and purposes of the municipal corporation." *Westmore Equities, LLC v. City of Mounds*, 15-CV-00109-JPG-DGW, 2017 WL 3055519, at *3 (S.D. Ill. July 19, 2017) (quoting

6

*Pesticide Pub. Policy Found. v. Village of Wauconda,* 510 N.E.2d 858, 861 (Ill. 1987)). Non-home rule units cannot act contrary to "the spirit of state law . . . and the general policy of the state." *Hawthorne*, 204 Ill.2d at 258–59. Thus, non-home rule powers, including the authority to contract, are strictly construed. *Columbia Crossing, L.L.C. v. City of Columbia, Ill.*, 07-CV-636-JPG, 2008 WL 2875251, at *3 (S.D. Ill. July 24, 2008). Any doubts as to the existence of a power must be resolved against the municipality. *Id.*

Raven's Place correctly points out that no state statute explicitly authorizes Blue Island to make this specific contract. *See* [19] at 4. Blue Island relies on various state statutes, including 65 ILCS 5/2-2-12 (granting incorporated cities the power to contract) and the Illinois Liquor Control Act, 235 ILCS 5/ et. Seq, for authority to enter into the settlement agreement. [20] at 5-7. Illinois courts have granted non-home rule latitude to regulate liquor licensees based on Section 1 of Article IV of the Illinois Liquor Control Act. *Jacobsen v. State of Ill. Liquor Control Comm'n*, 97 Ill. App. 3d 700, 701, 423 N.E.2d 531, 532 (2d Dist. 1981). The Act provides that "every city . . . shall have the power . . . to establish such further regulations and restrictions upon the issuance of and operations under local licenses not inconsistent with law as the public good and convenience may require." *Id.* (quoting 235 ILCS 5/4-1) (collecting cases). As the *Jacobson* court held, "the power of the locality to regulate liquor licensees is limited only by the requirement that it must be for the public good . . . [and] cannot deny a liquor license to any class of licensees." *Id.* Regulating *conduct* at licensed businesses, as opposed to the issuance

7

of the license itself, is within the powers granted to municipalities by the Illinois Liquor Control Act. *Id.*; *Cheetah Enterprises, Inc. v. Lake Cnty.*, 22 Ill. App. 3d 306, 317 N.E.2d 129 (2d Dist. 1974) (upholding a non-home rule ordinance prohibiting nude dancing inside licensed establishments because it was "aimed at the regulation of conduct."). As for Blue Island's regulation by settlement agreement, Illinois municipalities have a broad authority to contract pursuant to their other statutory powers. 65 ILCS 5/2-2-12.

Here, the settlement agreement contains restrictions aimed at addressing conduct. Moreover, the restrictions were implemented by a voluntary, mutual contract that permitted Raven's Place to keep operating with its liquor license in lieu of attending a hearing before the liquor license commission. Considering these circumstances, the Court finds that Blue Island had legal authority to enter into the settlement agreement with Raven's Place.

### 2. Scope of General Release

The Court now turns to whether the release covers claims against Blue Island in the instant complaint. The agreement commits Raven's Place to releasing "all claims against the City of Blue Island, its officials and employees or agents including but not limited to an appeal of this matter." [16] at 7. Under Illinois law, a release couched in such general language applies to "all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Ramos v. Piech*, 55 F.4th 1118, 1121 (7th Cir. 2022) (quoting *Otroski v. Lake County*, 33 F.4th 960, 5 (7th Cir. 2022)); *Hampton v. Ford Motor Co.*, 561

8

F.3d 709, 715 (7th Cir. 2009) ("[A general release] intended for [signing party] to release any potential claims based on conduct that occurred prior to the execution date.").

Here, then, the general release covers all claims that Raven's Place was aware of, or could have reasonably discovered, at the time of signing. Even construing the facts in the light most favorable to Raven's Place, it released the federal and Illinois due process claims that attack the constitutionality of the agreement itself, alleging the agreement is arbitrary and capricious, or overly restrictive and inhibits plaintiffs' right to labor freely. *See Ramos*, 55 F. 4th at 1121 (dismissing an arrestee's § 1983 claim as waived because he knew about claims related to his 2016 arrest when he signed a settlement agreement with release in 2017). Plaintiffs' due process claims are dismissed.

However, Raven's Place could not have reasonably anticipated bringing its equal protection claim when it agreed to the release. That claim, relying on both federal and Illinois law, alleges that Blue Island treated other bars more favorably on the basis of race *after* the May 2021 agreement. [1] at 21-25, ¶¶ 102-128. The release could not reasonably cover equal protection violations that occurred after the fact, and so Plaintiffs may assert these claims against Blue Island.

### B. Equal Protection Claims

Plaintiffs assert that Defendants' disparate treatment of bars in Blue Island violated its right to equal protection under the Fourteenth Amendment to the U.S. Constitution as well as its composite rights under the Illinois constitution.

9

Defendants move to dismiss the claim for failure to state a claim. The Court analyzes the federal and Illinois state law equal protection claims under the same standard. *Jarabe v. Indus. Comm'n,* 172 Ill.2d 345, 216 Ill.Dec. 833, 666 N.E.2d 1, 3 (1996).

First, Defendants argue that Plaintiffs do not plead a violation of its fundamental rights under the Fourteenth Amendment. [16] at 11. However, a business has standing to bring an equal protection claim under § 1983 for state regulation of the business based on the race of its owners or customers. *Thorncreek Apartments III, LLC v. Vill. of Park Forest,* 970 F.Supp. 2d 828, 841 (N.D. Ill. 2013) (collecting cases). Here, Plaintiffs allege that Defendants compelled it to adopt a more onerous security plan as compared to other similarly situated business. [1] at 20-25, ¶¶ 102, 115-16, 119-25. This discrepancy in the "degree of the extreme measures imposed by Defendants," Plaintiffs allege, "have only been placed on Plaintiffs, as African American owned and operated businesses." *Id.* at ¶ 121. Plaintiffs have thus stated a plausible violation of its fundamental rights.

Defendants also contend that the settlement agreement, which this Court has construed as a valid contract, does not amount to state regulation. Taking all reasonable inferences in favor of Plaintiffs at this stage, the Court finds that Blue Island officials' drafting, negotiating, and enforcing the agreement amounts to state action. *See also* [1] at 10, ¶ 21 (Raven's Place personnel "did not believe that they had the ability to negotiate these required terms further with Blue Island."). Plaintiffs may pursue a race-based equal protection claim based on the

10

discriminatory adoption and enforcement of the settlement agreement.

Next, Defendants argue that Plaintiffs do not adequately allege racially discriminatory intent. Courts apply a low bar to equal protection claims at the pleading stage. In *Williams v. Dart*, for example, the Seventh Circuit reversed the dismissal of an equal protection race discrimination claim where the plaintiffs alleged that the sheriff targeted them for detention because of their race, reasoning that this simple allegation qualified as "fair notice." 967 F.3d 625, 638 (7th Cir. 2020), *reh'g denied* (Aug. 21, 2020); *see also Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (noting that "liberal" pleading requirements "particularly with regard to Equal Protection claims"). A plaintiff is simply required to "allege that a particular defendant discriminated against him in a particular way because of a particular characteristic." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

Plaintiffs have pled enough factual allegations to state a plausible equal protection violation under federal and state law. Among other things, Plaintiffs allege that Defendants intentionally discriminated against the business on the basis of its owners' race by mandating more onerous business restrictions. [1] at 8-9, ¶45-46. ¶¶45-50, 54-57. That alone is sufficient to survive a motion to dismiss. Moreover, Plaintiffs name three other bars in Blue Island that experienced violent crime yet received more lenient treatment from city officials, [1] at 7-9, ¶¶ 40-58. Plaintiffs have clearly met their burden, as they are not even required to identify similarly situated comparators at the pleading stage, *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) (in Title VII gender discrimination claim

11

"plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the "indirect" method of proof" to survive motion to dismiss). Plaintiffs' allegations "offer sufficient reason to believe [that Defendants] could be found liable for intentional discrimination." *Williams*, 967 F.3d at 638.

Finally, Defendants move to dismiss on the basis that Plaintiffs do not sufficiently allege municipal liability. A municipality faces liability under § 1983 only if a municipal "policy or custom" is the "moving force" behind a constitutional violation. *Milchtein v. Milwaukee County*, 42 F.4th 814, 826 (7th Cir. 2022). Three types of actions support *Monell* liability: (1) an express policy; (2) a widespread practice that is so well-settled that it constitutes a custom or practice; or (3) a final policymaker caused the constitutional injury. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). While *Monell* claims are not subject to a heightened pleading standard, *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), plaintiffs must plead "factual content that allows the court to draw the reasonable inference" that the municipality maintained a policy or custom causing the alleged constitutional injury, *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011).

This is close, but the Court finds that the complaint alleges a plausible theory of *Monell* liability. Plaintiffs do not allege that Blue Island has an explicit policy of race discrimination, nor do they allege a widespread practice. Their path to municipal liability is plausibly alleging that a final policymaker caused its

12

constitutional injury. The court agrees with Plaintiffs that the allegation that Defendant Bilotto served as the mayor of Blue Island and head of its local liquor commission is sufficient to find he acted as a final policymaker to restrict the liquor license. [19] at 12-13.

Liquor commissioners qualify as final policymakers under Illinois law when they "revoke or suspend any license issued" pursuant to their statutory authority. *La Playita Cicero, Inc. v. Town of Cicero, Illinois*, 175 F. Supp. 3d 953, 972 (N.D. Ill. 2016) (quoting 235 Ill. Comp. Stat. 5/7-5.) In this case, Plaintiffs base their equal protection claims on the settlement agreement signed in lieu of an official liquor license commission decision. [1] at ¶ 120. Accepting the facts in the light most favorable to Plaintiffs, it is a reasonable inference that Bilotto approved or signed the agreement on behalf of Blue Island and is a final policymaker with regards to liquor license decisions. Whether Plaintiffs will be able to establish municipal liability conclusively is a summary judgment question.[1]

However, Plaintiffs have not plausibly pled a claim against Bilotto in his *individual* capacity without more factual allegations about his personal involvement in the settlement agreement. To plead a claim against a public official in his individual capacity, a plaintiff must allege personal involvement in the alleged constitutional violation, including a "causal connection" between the public

---

[1] Pleading a claim against defendant Bilotto in his official capacity is the same as suing Blue Island. *Sow v. Fortville Police Dep't,* 636 F.3d 293, 300 (7th Cir.2011) ("An official capacity suit is another way of pleading an action against an entity of which the officer is an agent."). The Court will therefore not dismiss the claim against Bilotto in his official capacity.

official and the alleged misconduct. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Here, Plaintiffs have only pleaded factual allegations that Bilotto served as local liquor commissioner and that he was present at the meetings when municipal officials made racist remarks about Blue Island patrons. That is not enough to show Bilotto personally caused an equal protection violation. Any claim against Bilotto in his individual capacity is dismissed without prejudice.

## IV. Conclusion

For the reasons explained above, this Court grants Defendants' motion to dismiss Plaintiffs' federal and state due process claim. The Court denies the motion to dismiss equal protection claims in Counts I and II. Any claim against Bilotto in his individual capacity is dismissed without prejudice. Defendant is directed to answer or otherwise respond to the amended complaint by January 31, 2024.

E N T E R:

Dated: January 17, 2024

MARY M. ROWLAND
United States District Judge

14