**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RAVEN'S PLACE, LLC, et al. | |
| Plaintiffs, | |
| | Case No. 23-cv-00728 |
| v. | |
| CITY OF BLUE ISLAND, an Illinois Municipal Corporation, and FRED BILOTTO, in his individual capacity and as Mayor of the City of Blue Island | Judge Mary M. Rowland |
| Defendants. | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Raven's Place LLC (d/b/a "Raven's Place" and "The Vault Entertainment Group"), a Black-owned bar located in Blue Island, and its owner, Dushone Thomas, and manager, Raymond Thomas (collectively "Plaintiffs"), brought claims against the City of Blue Island. Plaintiffs assert due process and equal protection claims under the U.S. and Illinois constitutions, a claim for declaratory judgment, and various tort claims. Before this Court is Defendants' motion to dismiss the First Amended Complaint. [70]. For the reasons explained below, this Court grants in part Defendants' motion to dismiss.

## I.    Background

The following factual allegations taken from the First Amended Complaint ([64]), the operative complaint, are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). The Court incorporates the Background section of its Memorandum Opinion and Order [29]

granting in part and denying in part Defendants' Motion to Dismiss the Complaint [16].

Plaintiffs owned and operated Raven's Place and the Vault, two establishments licensed to serve a full liquor bar, in Blue Island, Illinois. [64] ¶¶ 4–6, 19. Following a "criminal incident" outside the Vault, Blue Island suspended its liquor license. *Id.* ¶¶ 21, 29. In lieu of a hearing before the liquor commission, Blue Island and Plaintiffs entered into a settlement agreement that laid out certain mandatory conditions for the Vault and Raven's Place to operate (the "Settlement Agreement"). *Id.* ¶¶ 28, 30. After a shooting in the vicinity of Raven's Place, Blue Island revoked Raven's Place's liquor license, but the bar continued to operate pending an appeal. *Id.* ¶¶ 50–51, 53, 58. Following a subsequent shooting in the area on January 1, 2023, Blue Island revoked Plaintiffs' retail liquor licenses and business license. [70-1] City of Blue Island's Findings, Decision, and Order Regarding Raven's Place LLC's Business License, dated January 10, 2023, at 36–38; *id.* City of Blue Island Liquor License Commissioner's Findings, Decision, and Order Regarding Raven's Place LLC's Liquor Licenses, dated January 10, 2023, at 40–51.

On January 6, 2023, Plaintiffs brought suit against Blue Island in Cook County Circuit Court. *See* [1]. The complaint asserted claims for violation of Plaintiff's substantive due process and equal protection rights under the U.S. Constitution (Count I) and Plaintiffs' right to due process and equal protection under the Illinois constitution (Count II). [1]. On February 6, 2023, Defendants removed the case to federal court. *Id.* On Defendants' motion, this Court dismissed Plaintiffs'

federal and state due process claim and any claims against Blue Island's mayor, Defendant Bilotto in his individual capacity. [29].

Meanwhile, the parties are litigating the revocation of Plaintiffs' business and liquor licenses in state court. On February 3, 2023, Raven's Place filed a complaint in the Cook County Circuit Court for administrative review of the revocation of its business license. [70-1] Complaint for Administrative Review, *Raven's Place v. Blue Island, et al.*, 2023CH01090 ("CC Complaint I") at 29–34. Raven's Place requested review of the revocation of its business license and sought a reversal of the revocation order. *Id.* ¶¶ 22, 33. On June 9, 2023, the Cook County Circuit Court denied Raven's Place's complaint for administrative review. [70-1] Order, *Raven's Place v. Blue Island, et al.*, 2023CH01090 at 69–75. The court held the revocation decision was not contrary to the manifest weight of evidence and the introduction of hearsay testimony at the revocation proceedings did not violate the procedural due process rights of Raven's Place. *Id.* at 72–75. Raven's Place has appealed the administrative review decision affirming the revocation. [70-1] Notice of Appeal, *Raven's Place v. Blue Island, et al.*, 2023CH01090 at 100–76. The appeal currently is pending. [70] at 6.

On July 19, 2023, Raven's Place filed another complaint in the Cook County Circuit Court, this time requesting administrative review of the Illinois Liquor Control Commission's decision to uphold Blue Island's revocation of Raven's Place's liquor licensure. [70-1] Complaint for Administrative Review, *Raven's Place v. Blue Island, et al.*, 2023CH06648 (("CC Complaint II") at 180–86. Raven's Place again

sought a reversal of the revocation order. *Id.* at 186. The Cook County Circuit Court denied Raven's Place's complaint for administrative review and the matter is currently on appeal. *See* [70] at 6–7.

On November 18, 2024, Defendants moved to dismiss on the grounds that Plaintiffs' claims are barred by *res judicata* or, in the alternative, *Rooker-Feldman*. [59]. The Court granted Plaintiffs' motion leave to amend the initial complaint ([61]) and Plaintiffs filed the First Amended Complaint (64]). Plaintiffs reasserted the same claims as set forth in the initial complaint[1], amended their factual allegations, and alleged new counts for declaratory judgment as well as defamation and tortious interference with contract. *See* [64]. The tort claims stem from a fire that occurred near Raven's Place on September 7, 2023. *Id.* ¶ 109. Plaintiffs allege Blue Island officials accused Raven's Place manager, Plaintiff Raymond Thomas, of facilitating the fire *Id.* ¶ 124.

Before the Court now is Defendants' motion to dismiss the First Amended Complaint under Rules 12(b)(1) and 12(b)(6).

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of complaints over which the court may not exercise subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In evaluating a motion under Rule 12(b)(1), the court must first determine

---

[1] Plaintiff realleged their federal and state due process claims, which this Court previously dismissed. *See* [29]. The First Amended Complaint acknowledges the state due process claim was dismissed and states it is "[r]alleged for purposes of appeal." [64] at 28. Thus, the Court understands Plaintiffs did not reallege their state due process claim as a "live" count in this litigation. Defendants did not move to dismiss Plaintiffs' previously dismissed claims. *See* [70].

whether the defendants raise a factual or facial challenge to subject matter jurisdiction. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015 (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). A facial challenge argues that the plaintiff has not sufficiently alleged a basis for subject matter jurisdiction, while a factual challenge contends that even if the pleadings are sufficient there is in fact no subject matter jurisdiction. *Id.* Here, Defendants assert a factual challenge. In this context, the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173. If a "complaint is facially sufficient but external facts call the court's jurisdiction into question, we 'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (quoting *Apex Digital*, 572 F.3d at 444). When faced with a Rule 12(b)(1) motion, the plaintiff bears the burden of proving that the court has jurisdiction. *See Apex Digital*, 572 F.3d at 443.

The Court assumes the parties' familiarity with its explanation of the standards for Rule 12(b)(6) motions set forth in its first motion to dismiss opinion. *See* [29] at 4–5.

### III. Analysis

Defendants moved to dismiss the First Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6). [70].

### A. Defendants' Rule 12(b)(1) Motion

Where, as here, a defendant's motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge before reviewing the merits of any claim. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) ("We are required to consider subject-matter jurisdiction as the first question in every case, and we must dismiss this suit if such jurisdiction is lacking.") (quoting *Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014)). Defendants argue the Court lacks jurisdiction under the *Rooker-Feldman* doctrine, or alternatively, pursuant to *res judicata*.

### 1. *Rooker Feldman* Doctrine

Defendants assert this Court lacks subject matter jurisdiction over this dispute pursuant to the *Rooker-Feldman* doctrine. [70] at 16–20. The doctrine bars lower federal courts from reviewing and reversing state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). They contend Plaintiffs' claims in the *instant* case are "inextricably intertwined" with the Cook County Circuit Court judgments and are barred by the *Rooker-Feldman* doctrine. Plaintiffs disagree that *Rooker-Feldman* applies here for two reasons: (i) the doctrine does not apply to monetary damages claims; and (ii) Defendants have not established the elements of the doctrine. [78] at 6–11.

The *Rooker-Feldman* doctrine prevents a losing party in state court from "complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Lower federal courts are not vested with appellate authority over state courts. *Sykes v. Cook Cty Cir. Ct. Probate Div.*, 837 F.3d 736, 741 (7th Cir. 2016). Rather, "the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). The rationale for the *Rooker-Feldman* doctrine is that "no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." *Sykes*, 837 F.3d at 742.

The Seventh Circuit recently affirmed the narrowness of the *Rooker-Feldman* doctrine.[2] *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 765–66 (7th Cir. 2024) (explaining "*Rooker-Feldman* must stay in its lane"), *cert. denied*, 145 S. Ct. 1167 (2025); *Shophar v. Pathway Fam. Servs., LLC*, No. 22 CV 02333, 2024 WL 3950215, at *4 (N.D. Ill. Aug. 27, 2024). As interpreted by the Seventh Circuit, the doctrine only applies when five elements are present: (i) the federal plaintiff must have been a state-court loser; (ii) the state-court judgment must have been become final before the federal proceedings began; (iii) the state-court judgment must have caused the alleged injury underlying the federal claim; (iv) the claim must invite the federal district court to review and reject the state-court judgment; and (v) the federal plaintiff had a reasonable opportunity to raise his federal issue in the state courts.

---

[2] Contrary to Defendants' arguments ([86] at 3–4), *Gilbank* is the controlling law in this circuit on *Rooker-Feldman. See Motykie v. Motykie*, No. 24-2676, 2025 WL 1111667, at *1 (7th Cir. Apr. 15, 2025) ("[The Seventh Circuit's] decision in *Gilbank* controls the scope and application of the *Rooker-Feldman* doctrine in this circuit.").

*Gilbank*, 111 F.4th at 766. "[I]dentifying what the plaintiff has requested is the key *Rooker-Feldman* inquiry" and the doctrine will "not apply when, given the relief sought, a plaintiff . . . does not seek to reverse a state court judgment." *Id.* at 793.

Defendants claim this Court would need to overturn the state court's ruling that the Settlement Agreement was valid and Blue Island's reliance on the same to revoke Plaintiffs' business and liquor licenses was acceptable to reach the merits of this case. [70] at 18. They argue Plaintiffs' federal claims are "inextricably intertwined" with the state court judgments denying review of the revocation of Plaintiffs' licenses or at minimum indirectly challenge the state judgments. *Id.* If Plaintiffs succeed on appeal, Defendants assert, the constitutional claims will remain before the state court. *Id.* at 18–19.

Plaintiffs dispute that the *Rooker-Feldman* doctrine precludes this suit because the doctrine does not apply where a plaintiff is seeking monetary damages rather than asking a federal court to directly nullify a state court order. [78] at 6 (citing *Gilbank*, 111 F.4th at 792 (holding on damage claims set forth in Part I of opinion by Kirsch, J., joined in relevant part by Easterbrook, J.)). Here, Plaintiffs request monetary damages for all of their claims except their declaratory judgment claim. *See* [64] ¶¶ 191, 227, 236, 248, 262, 288. Plaintiffs also argue the doctrine does not apply for the following reasons: (i) the state court actions remain pending in the state appellate courts; (ii) the federal claims preceded the state actions; (iii) the federal claims are independent of the state claims; (iv) review of the federal claims would not reverse a state court judgment; and (v) Plaintiffs were not able to litigate

8

their discrimination claims in state court. [78] at 5–10.

The *Rooker-Feldman* doctrine does not bar Plaintiffs' claims. "Timing is everything under *Rooker-Feldman*." *Stewart v. JPMorgan Chase Bank, N.A.*, 716 F. Supp. 3d 677, 688 (N.D. Ill. 2024). The doctrine only precludes federal jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered *before* the district court proceedings commenced." *Exxon Mobil*, 544 U.S. at 284 (emphasis added); *Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir.2005) (explaining *Rooker-Feldman* "only applies to cases . . . where the losing party in state court filed suit in federal court *after the state proceedings ended*.") (internal quotation omitted and emphasis added).

Here, Plaintiffs are not "state court losers" who initiated this suit in federal court to reverse a state court judgment. *Rooker-Feldman* only applies when a federal lawsuit begins after a state court case ends. That did not happen here. This case began before Plaintiffs even initiated the pending state court suits. Neither the First Amended Complaint nor the state court filings submitted in support of Defendants' motion support that the state-court judgments related to Plaintiffs' constitutional allegations concluded before this case was initiated.

Plaintiffs filed this lawsuit alleging violations of the due process and equal protection rights under the U.S. and Illinois constitutions in the Cook County Circuit Court on January 6, 2023. [1] at 6. Defendants removed the case from state court to the Northern District of Illinois on February 6, 2023. *See* [1]. It is undisputed this case pre-dates Blue Island's decision to revoke Raven's Place LLC's business license

and retail liquor licenses—order entered January 10, 2023. [70-1] City of Blue Island's Findings, Decision, and Order Regarding Raven's Place LLC's Business License, dated January 10, 2023, at 36–38; *id.* City of Blue Island Liquor License Commissioner's Findings, Decision, and Order Regarding Raven's Place LLC's Liquor Licenses, dated January 10, 2023, at 40–51. Likewise, this case pre-dates Plaintiffs' complaint for administrative review of the revocation of their business license—filed February 3, 2023 in the Cook County Circuit Court ([70-1] CC Complaint I at 29–34)—and Plaintiffs' complaint for administrative review of the revocation of their liquor licenses—filed July 19, 2023 in the Cook County Circuit Court ([70-1] CC Complaint II at 180–86). Defendants do not address this timing issue.[3]

Accordingly, Plaintiffs were not state court losers when they brought this suit and this action is not barred by *Rooker-Feldman*. *J.B. v. Woodard*, 997 F.3d 714, 722–23 (7th Cir. 2021) (finding a plaintiff who filed his federal lawsuit while the state court's proceedings were ongoing was "not a state-court loser" and thus his claims not barred by *Rooker-Feldman*); *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (explaining that *Rooker-Feldman* does not apply if "the state court had not rendered a judgment before the district court proceedings began"); *Parker v. Lyons*, 757 F.3d

---

[3] Although Defendants do not argue Blue Island's October 2022 revocation of Raven's Place's liquor license is a final judgment entered before this federal suit was initiated, they present those facts in the background of their motion. *See* [70] at 6. Accordingly, the argument is waived. *See United States v. Adamson*, 441 F.3d 513, 521 n. 2 (7th Cir. 2006). Even if Defendants did make that argument, that would not change the outcome of this analysis. "[T]he *Rooker-Feldman* doctrine is concerned only with state court determinations, it presents no jurisdictional obstacle to judicial review of executive action, including decisions made by state administrative agencies." *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)); *see also Hemmer v. Ind. State Bd. of Animal Health*, 532 F.3d 610, 614 (7th Cir. 2008) (finding that the *Rooker-Feldman* doctrine did not bar the claims of a plaintiff who lost in state agency proceedings).

701, 705–06 (7th Cir. 2014), *overruled on other grounds by Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 402 (7th Cir. 2023) ("Since [*Exxon Mobile*], all federal circuits that have addressed the issue have concluded that *Rooker-Feldman* does not apply if, as here, a state-court appeal is pending when the federal suit is filed."); *see also See Gilbank*, 111 F.4th at 795 ("When the Supreme Court tells us that a rule applies only when four elements are met, we do not read one of those requirements as superfluous.").

This case may seem like the sort of case where the *Rooker-Feldman* doctrine should apply. But the *sine qua non* of *Rooker-Feldman* is a state court judgment. The doctrine is intended to prevent parties from running to federal court to challenge an injury caused by state court judgment. If there is no state-court judgment when the federal suit is filed, the federal plaintiff cannot be complaining of an injury caused by a nonexistent state-court judgment." 18 James Wm. Moore *et al.*, Moore's Federal Practice § 133.33[2][c][i] (3d ed. 2023). Accordingly, Plaintiffs' claims do not invite the Court to "undo, reverse, or overturn [a] state court judgment" and do not implicate the *Rooker-Feldman* doctrine. *See Gilbank*, 111 F.4th at 795.

### 2. *Res Judicata*

Defendants alternatively contend *res judicata* bars Plaintiffs' claims. [70] at 13–16. Res judicata is an affirmative defense. Fed. R. Civ. P. 8(c); *see also U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Affirmative defenses typically may not be considered on a motion to dismiss. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). A motion for judgment on the pleadings is an appropriate way to raise a *res judicata* defense. *Carr v. Tillery*, 591

F.3d 909, 913 (7th Cir. 2010). Accordingly, the Court reserves judgment on Defendants' *res judicata* affirmative defense, which they may raise again at another stage in this litigation. The affirmative defense remains viable.

### B. Defendants' Rule 12(b)(6) Motion

Defendants move to Plaintiffs' defamation and tortious interference of contract claims (Counts IV to VI) on the grounds that the allegations (i) are time barred; (ii) are barred by the Illinois Tort Immunity Act (defamation only); and (iii) fail to state a claim (tortious interference only). [70] at 9–13. Plaintiffs disagree.

### 1. Statute of Limitations (Counts IV, V, and VI)

Defendants argue Plaintiffs' newly asserted tort claims are time barred. [70] at 11–12. Indeed, the Illinois Tort Immunity Act provides "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101. According to Defendants, the tort claims should have been filed by September 7, 2024 at the latest—one year after the fire near Raven's Place. [70] at 11–12.

The Court declines to dismiss the defamation and tortious inference claims based on the Tort Immunity Act at this stage of the litigation. "The Illinois Tort Immunity Act is an affirmative defense, and a plaintiff does not have to plead around affirmative defenses." *Prokop v. Hileman*, 588 F. Supp. 3d 825, 844 (N.D. Ill. 2022); *Sterling v. Bd. of Educ. of Evanston Township High Sch. Dist. 202*, No. 19-CV-05599, 2021 WL 809763, at *7 (N.D. Ill. Mar. 3, 2021) ("[The Tort Immunity Act] provides

affirmative defenses, and plaintiffs generally need not anticipate and overcome affirmative defenses in their complaint."). So too with any statute of limitations defense. *U.S. Gypsum*, 350 F.3d at 626.

Dismissal based on an affirmative defense "is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (emphasis in original). That is not the case here. Plaintiffs allege Defendant Bilotto "made an entirely unfounded and inappropriate remark about Thomas starting the fire at Raven's Place" at some time "[s]hortly after the September 7 fire." [64] ¶¶ 122–23. But that statement is not the statements Plaintiffs contend caused their injury. Instead, those are "accusations," upon information and belief made by Blue Island officials "to Mr. Thomas' insurance carrier alleging Mr. Thomas facilitated or was involved in the September 7, 2023 fire." *Id.* ¶ 124. The precise timeline is not clear and thus the complaint does not "unambiguously establish all the elements of the defense." *Hyson USA*, 821 F.3d at 939. Defendants may be able to show that they are able to properly invoke the time bar under the Illinois Tort Immunity Act or mount any other statute of limitations defense, however, such a determination which requires the Court to go beyond the allegations in the First Amended Complaint is premature at the motion to dismiss stage.

Accordingly, the Court does not need to reach the question of whether the tort claims relate back to the initial complaint for purposes of tolling the statute of limitations.

### 2. Defamation Claim (Counts IV and V)

Defendants argue the defamation claims must be dismissed because they are immune from liability under the Illinois Tort Immunity Act for any allegedly defamatory statements made. [70] at 9–10. Plaintiffs agree the Act provides any "local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous," 745 ILCS 10/2-107, and public employees acting within the scope of employment are not liable "for an injury caused by his negligent misrepresentation," 745 ILCS 10/2-210. However, Plaintiffs contest that Blue Island officials were acting in an official capacity when engaging in the alleged defamatory conduct and argue immunity does not extend to "willful and wanton conduct." [78] at 12–13.

The same reasons the Court declined to dismiss the tort claims on statute of limitations grounds apply with equal force here. The Tort Immunity Act is an affirmative defense that Plaintiffs did not have to plead around. *Prokop*, 588 F. Supp. 3d at 844. The parties will have the opportunity to test the circumstances of the alleged defamatory statements through discovery to prove whether the Blue Island officials were acting within the scope of employment or acting willfully and wantonly when the alleged statements were made.

### 3. Tortious Interference of Contract Claim (Count VI)

Defendants contend Plaintiffs have failed to state a claim for tortious interference. To state a claim under Illinois law for tortious interference with contracts, a plaintiff must demonstrate: "(1) the existence of a valid and enforceable

14

contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Healy v. Met. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–55 (1989)). Defendants challenge the fourth element. [70] at 11–12. Specifically, Defendants argue Plaintiffs failed to plead a breach of contract by Badger Mutual Insurance based on the Blue Island or Blue Island employees' allegedly false or misleading statements regarding the fire on the premises. Thus, Defendants assert, the investigation of the fire and the insurance company's decision to deny the claim is not attributable to the City or its employees. [70] at 12.

Relying on *Scholwin v. Johnson*, 147 Ill.App.3d 598 (2d Dist. 1986), Plaintiffs argue interference with a plaintiff's ability to perform, and not a third party, is sufficient to state a claim. [78] at 14–14. Since *Scholwin*, Illinois Appellate Courts have held otherwise. *See, e.g.*, *Schuler v. Abbott Laboratories*, 265 Ill.App.3d 991, 995 (1st Dist. 1993) ("While it is true that 'action directed at a third party' will often include contact with the third party, we can find no requirement of contact in the law and do not create one now."); *Cont'l Mobile Tel. Co., Inc. v. Chi. SMSA Ltd. P'ship*, 225 Ill.App.3d 317, 325 (1st Dist. 1992) ("The acts that form the basis of tortious interference must be directed at parties other than the plaintiff."); *Du Page Aviation Corp. v. Du Page Airport Auth.*, 229 Ill.App.3d 793, 804 (2d Dist. 1992) ("Illinois courts require that a tortious interference claim be supported by allegations that the

defendant acted toward a third party.").

Another court in this Circuit recently addressed how to apply the element at issue when there are conflicting Illinois appellate decisions, and the Illinois Supreme Court has not weighed in on the question. *Butler v. Holstein Ass'n, USA, Inc.*, 703 F. Supp. 3d 927, 940 (C.D. Ill. 2023). There, the court selected the interpretation that reasonably restricts liability and found that a tortious interference with contract claim requires a defendant to direct an action toward a third party. *Id.* (citing *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994)). We agree. Although Plaintiffs have pleaded actions directed toward a third party, they do not plead the third party breached a contract with Plaintiffs. And Plaintiffs cannot rely on Defendants' actions directed at Plaintiffs that interfered with their performance of the insurance contract. Accordingly, Plaintiffs have failed to state a claim for tortious interference with contract.

## **CONCLUSION**

For the stated reasons, Defendants' Motion to Dismiss the First Amended Complaint Under Rules 12(b)(1) and 12(b)(6) [70] is granted as to the tortious interference with contract claim in Count VI and otherwise denied.

E N T E R :

Dated: May 15, 2025

_____
MARY M. ROWLAND
United States District Judge